DECISION
Appellant, Heather Kuhn, appeals from the January 5, 1999 decision and entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting a deviation from the Ohio Child Support Guidelines, ordering appellee, Patrick Epp, to pay ongoing child support in the amount of $173.80 per month, plus processing fees, and ordering that a new birth certificate be issued changing the minor child's last name to Epp. For the reasons that follow, we affirm the decision of the trial court.
Jacob Wesley Kuhn was born on June 19, 1995. The natural parents, Patrick Epp and Heather Kuhn (maiden name Smith), lived together approximately two and one-half years until Heather Kuhn terminated the relationship five or six months into her pregnancy. Heather Kuhn then married Kelton (Kelly) Kuhn approximately two months before the birth of the child. Heather Kuhn's decision to marry Kelly Kuhn resulted in the termination of health care benefits that her parents had maintained on her behalf and that would have covered birth expenses. Upon the birth of the child, he was given the last name of his step-father, Kelly Kuhn, rather than the last name of his natural father, Patrick Epp.
Immediately after the birth of the child, Patrick Epp sought companionship time with his son. On several occasions, Heather Kuhn allowed contact between Patrick Epp and his son during the summer of the child's birth. However, Kelly Kuhn sought to eliminate Patrick Epp's involvement in his son's life and consequently, Heather Kuhn began to deny all contact between Patrick Epp and his son. Patrick Epp attempted on several occasion to reach an amicable agreement in regards to companionship time with his child, but his attempts were rebuffed. Patrick Epp also attempted to establish parentage through the Child Support Enforcement Agency of Franklin County; however, Heather Kuhn refused to cooperate.
On January 28, 1997, Patrick Epp filed a complaint to determine parentage in conjunction with a complaint for allocation of parental rights and responsibilities. Subsequently, Heather Kuhn contested the parentage action and required that DNA testing be completed. After the determination of parentage, Patrick Epp filed a motion for name change on July 30, 1997.
The matter came on for trial on the issue of parental rights and responsibilities and the name change on August 25, 1998. The parties reached an agreement as to issues of parenting and entered into a shared parenting decree. Still at issue were ongoing child support, child support arrearage, and the name change. The parties agreed to submit to the trial court those issues on the basis of affidavits and supporting documents.
On October 16, 1998, the magistrate filed his decision. The magistrate found that child support should be set at $438.19 per month pursuant to guideline calculations but that a deviation should be permitted reducing the support obligation to $173.80 per month. The magistrate further found support arrearages of $13,295.05 and ordered them liquidated at the rate of $25 per month. Finally, the magistrate denied the motion to change the child's name to that of the natural father finding that it was not in the child's best interest.
The parties' objected to the magistrate's decision and, on December 4, 1998, the trial court held an oral hearing on the objections. On January 4, 1999, the trial court issued its decision sustaining the deviation and proposed child support award, but reducing the arrearage to $8,653.84, and ordering that the arrearage be liquidated at the rate of $50 per month, plus processing fees. Finally, the trial court determined that it was in the best interest of the minor child to grant Patrick Epp's request for a name change.
Heather Kuhn appealed, assigning as error the following:
 1. THE COURT ERRED IN ORDERING A DEVIATION FROM THE CHILD SUPPORT GUIDELINES IN EXCESS OF SIXTY PERCENT OF THE "GUIDELINE" AMOUNT.
 2. THE COURT ERRED IN ORDERING THE MINOR'S SURNAME CHANGED TO THAT OF THE DEFENDANT-APPELLEE.
In her first assignment of error, appellant argues that the trial court abused its discretion in granting the deviation from the child support guidelines to the extent it granted it. Appellant claims that a financial deviation of over sixty percent is not supported by the determination that Patrick Epp would have the child approximately one-third of the month. Appellant notes that Patrick Epp's visitation provides for approximately forty additional days per year over the standard visitation schedule included in the court's rules of practice as Juv.R. 22.
Appellant also argues that Patrick Epp's offer and her subsequent refusal to allow him to care for the child for more time, which would have alleviated some of the daycare costs incurred by the mother, is no longer a relevant consideration, as Patrick Epp and Heather Kuhn currently both work second shift jobs. Finally, appellant notes that Mrs. Kuhn earns $20,051 per year and Mr. Epp earns $17,701 per year. By granting a deviation of sixty percent, appellant contends that this places the obligation of providing support for the child disproportionately upon the mother.
In reviewing matters concerning child support, the trial court's decision will not be disturbed absent a showing of an abuse of discretion. Pauly v. Pauly (1997), 80 Ohio St.3d 386;Booth v. Booth (1989), 44 Ohio St.3d 142. Here, in granting the deviation from child support guidelines, the trial court took into consideration the Kuhn's lack of credibility concerning daycare costs. For much of the time following the birth of the minor child, daycare was not needed at all and was thus incurred by Mrs. Kuhn unnecessarily. Moreover, the trial court did not overlook the fact that both parties now work nights and that daycare is therefore still necessary. However, the trial court specifically found that the evidence presented concerning the amount of money expended by the Kuhns for daycare was not credible.
The trial court also found that Mrs. Kuhn, while earning more than Mr. Epp, had the added benefit from her remarriage of shared living expenses with another person while Mr. Epp does not. There was evidence before the trial court that Mr. Epp's budget only allowed for basic necessities and, therefore, a deviation was appropriate. Further, the trial court found that it was in the best interest of the minor child that both parents have the ability to maintain a suitable residence and have the basic necessities of life.
R.C. 3113.21(B).5 provides authorization for a child support deviation, and in determining the amount of child support to be paid, we are persuaded that the trial court considered the factors and criteria set forth in division (B)(3) of this section. Consequently, we find no abuse of discretion in the deviation ordered by the trial court. The first assignment of error is not well-taken and is overruled.
In her second assignment of error, appellant argues that the trial court abused its discretion by imposing its personal beliefs on the facts of the case regarding the issue of a name change.
At the close of the hearing on December 4, 1998, the trial court noted:
 * * * Well I will take these under advisement. But, there's one thing I have a strong opinion on and that is the name change because I think at 3 he can have his name changed to his real biological name, which I think a child should have. I mean, she may even divorce this [sic] in 6 months, 2 years, 6 years and the kids going to have a third name. And he's always going to have his bond with his biological father, which is not a father who has not run away and not — not shown an interest in the child and shown up many years later. So, I can tell you one thing, that's — I know what my decision is going to be on the name change. It's going to be back to his natural father. And that's his dad. Always going to be his dad. That's for sure. That's one thing that we can guarantee. We can't guarantee marriages, since about 50% of them end up in divorce. So, that one I have a strong opinion on, and the rest I will issue a decision after I have a chance to look at more detail of the financial aspects of it too. Okay? [Tr. 12-13.]
In reviewing a decision that a child's name should be changed, the determination of what is in the best interest of the child is within the sound discretion of the trial court. Absent an abuse of discretion, a reviewing court will not substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135. In determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname, the court should consider: (1) the length of time that the child has used a surname; (2) the effect of the name change on the father/child relationship and on the mother/child relationship; (3) the identification of the child as part of a family unit; (4) the embarrassment, discomfort, and inconvenience that may result when a child bears a surname different from the custodial parents; (5) the preference of the child if the child is of an age and maturity to express a meaningful preference; and (6) any other factor relevant to the child's best interest. Bobo v. Jewell (1988), 38 Ohio St.3d 330.
The trial court found that it was in the minor child's best interest to change his last name to that of his biological father. The court noted that the child was only three years old and not enrolled in school or involved in organized activities in which a name change might cause confusion or embarrassment. The court further noted that Jacob spends time with both families and is integrated into each. Although his then-current daycare provider was a "Kuhn," the court noted that the arrangement would not necessarily continue in the future.
Of apparent concern to the trial court was its finding of an ongoing conflict between the stepfather and the natural father. The record indicates that the child's stepfather requires that Jacob refer to him as "Daddy" while referring to Mr. Epp as "Patrick." The stepfather dictated that he was to be Jacob's father and did not want Mr. Epp to have a relationship with his son. Thus, changing Jacob's last name to that of his biological father's would serve to strengthen the relationship which the stepfather seeks to undermine. The second assignment of error is not well-taken and is overruled.
Based on the foregoing, appellant's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
DESHLER and PETREE, JJ., concur.